# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

John Sabo,

       Plaintiff,

      v.                                 Case No. 20-cv-718

Sheri Hicks, Megan Erickson,
Barb Hanson, and Janelle Nehring,

Each in her individual capacity,

       Defendants.

## COMPLAINT

### I.    NATURE OF ACTION

101.    This is a civil action brought by the Plaintiff pursuant to 42 U.S.C. § 1983 in order to obtain monetary damages as a result of the Defendants' deliberate indifference in having unlawfully constrained his liberty by retaining him on probation for 291 days beyond the date when his probation should have terminated and by having incarcerated him unlawfully in the Racine County Jail for 133 of those days. Alternatively, as a supplemental cause of action, the Plaintiff asserts that the Defendants negligently caused his over-retention.

## II.   JURISDICTION AND VENUE

201.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

202.   The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III.   PARTIES

A.   <u>Plaintiff</u>

301.   The Plaintiff, John Sabo, is an adult resident of Wisconsin.

B.   <u>Defendants</u>

302.   Defendant Sheri Hicks is, on information and belief, an adult resident of Wisconsin.

303.   At times relevant to this action, Defendant Hicks was employed by the Wisconsin Department of Corrections (hereinafter, "DOC") as the Offender Records Supervisor in the Central Records Unit.

304.   Defendant Megan Erickson is, on information and belief, an adult resident of Wisconsin.

305.   At times relevant to this action, Defendant Erickson was employed by the DOC, Division of Community Corrections, as a probation officer for Racine County.

2

306. Defendant Barb Hanson is, on information and belief, an adult resident of Wisconsin.

307. At times relevant to this action, Defendant Hanson was employed by the DOC, Division of Community Corrections, as Assistant Regional Chief for the geographic region encompassing the County of Racine.

308. Defendant Janelle Nehring is, on information and belief, and adult resident of Wisconsin.

309. At times relevant to this action Defendant Nehring was employed by the DOC as an Advanced Corrections Sentencing Associate.

310. As relates to the conduct that is asserted in this Complaint, each Defendant was acting within the scope of her employment within the meaning of §895.46 Wis. Stats.

311. As relates to the conduct that is asserted in this Complaint, each Defendant was acting under color of state law within the meaning of 42 U. S. C. § 1983.

### IV.   ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On November 30, 2004, John Sabo was sentenced on Fond du Lac County Case 2003 CF 313 for a violation of 346.63(1), a Class H Felony.

402. He was sentenced to three years in prison and two years on extended supervision. That sentence was stayed, and he was placed on probation for a period of five years, consecutive to other specified sentences.

3

403. The offense that formed the basis for the conviction on Fond du Lac Case 2003 CF 313 had been committed on July 29, 2003, so Mr. Sabo was sentenced under 2001 Act 109 (Truth In Sentencing II).

404. Five years was an unlawfully long period of probation for a Class H felony under the TIS II statute that was in effect at the time of his offense.

405. Pursuant to Wis. Stat. § 973.09(2)(b)1, the maximum term of probation for conviction of a Class H felony when the offense had occurred in July, 2003, was three years.

406. After Mr. Sabo was sentenced, the paperwork with his sentencing information (including the judgment of conviction that listed his date of offense and term of probation) was sent to the Wisconsin Department of Corrections (hereinafter, "DOC") Central Records Unit where, within weeks of his sentencing, it was reviewed for, among other things, legality.

407. In 2004, the records of people who had been placed on probation, including those of John Sabo, were reviewed in the Central Records Unit by Records Supervisor Sheri Hicks for accuracy, completeness, and legality.

408. It was part of Ms. Hicks' job in 2004 to note any illegalities in a sentence, and if she found any, to notify the sentencing court and the probation office so that the illegalities could be corrected.

4

409. Defendant Hicks had received on-the-job training from the DOC as part of her employment.

410. Part of the training Ms. Hicks received included how to distinguish a lawful term of probation from a term of probation that exceeded lawful limitations.

411. In 2004, Defendant Hicks was aware that if she encountered a sentence that contained an illegally long term of probation, she should contact either the sentencing court or DOC counsel in order to have that sentence corrected.

412. Ms. Hicks owed a duty of care to all those who sentences she reviewed, including John Sabo, to note any sentences and/or terms of probation that exceeded the maximum period permitted by law and to initiate steps so that those illegalities would be corrected.

413. Ms. Hicks failed to note and/or failed to take steps to correct Mr. Sabo's unlawfully long term of probation.

414. Because his sentence on Fond du Lac County Case 2003 CF 313 was consecutive to other sentences, John Sabo did not begin his term of probation on that case until July 20, 2014.

415. Since the maximum period of probation of a Class H felony was three years, his probation on Fond du Lac County Case 2003 CF 313 should have terminated on or before July 19, 2017.

416.  However, Mr. Sabo remained on probation until May 3, 2018, after his attorney discovered the error and brought it to the attention of the trial court, and the court corrected the sentence by reducing Sabo's term of probation from five years to three years.

417. While he was supervised on probation, Mr. Sabo was required to endure limitations on certain freedoms in his day-to-day life as conditions of his probation.

418. Some of these freedoms are those to which persons who are not supervised on probation are constitutionally entitled.

419. While he was supervised on probation, Mr. Sabo's right of association, right of freedom to travel, right to engage in certain aspects of commerce, right to vote, right of privacy, and right to be free from warrantless searches were all limited by the conditions of his probation.

420. As part of the rules of his supervision, Mr. Sabo was required to report to his probation agent on a regular basis.

421. As part of the rules of supervision, John Sabo was required to submit to home visits from his probation agent.

422. As part of the rules of supervision, John Sabo was prohibited from traveling out of the state of Wisconsin unless he received advance permission and a travel permit from his probation agent, who, for a period of time, was Defendant Megan Erickson.

6

423. As part of the rules of supervision, for a period of time, John Sabo was required to return home every evening unless he received permission to do so from Agent Erickson.

424. As part of the rules of supervision, John Sabo was required to submit to daily breathalyzer tests.

425. As part of the rules of supervision, and according to state law, John Sabo was prohibited from voting in any federal, state or local election until he had completed his term of probation.

426. As part of the rules of supervision, John Sabo was prohibited from associating with any persons who were on supervision or who had been convicted of any crime without advance approval from his probation agent.

427. As part of the rules of supervision, John Sabo was required to submit to searches of his person or property if asked to do so by his probation agent.

428. As part of the rules of supervision, John Sabo was required to submit to tests as required by his probation agent, including urinalysis, blood tests, breathalyzer, and/or polygraph tests.

429. As part of the rules of supervision, John Sabo was not permitted to change employment without advance approval from his probation agent.

7

430. As part of the rules of his supervision, John Sabo was not permitted to purchase, trade, sell or operate a motor vehicle without the permission of his probation agent.

431. As part of the rules of his supervision, John Sabo was not permitted to borrow money or purchase on credit without obtaining advance permission to do so from his probation agent.

432. As part of the rules of his supervision, John Sabo was required to inform his probation agent of his admission to any treatment facility.

433. As part of the rules of his supervision, John Sabo was not allowed to enter any business that sold alcohol, including the grocery store, Pick 'n Save.

434. As part of the rules of his supervision, John Sabo was not allowed to enter any dining establishment that served alcohol.

435. In addition to the limitations described above, most of which are standard conditions imposed upon all probationers, Agent Erickson also required that John Sabo stop taking prescribed medication that had been ordered by his physician, on threat of revocation if he failed to do so.

436. On December 21, 2017, John Sabo was arrested and charged with a misdemeanor in Racine County Case 2017 CM 2559.

437. On December 22, 2017, the following day, Racine County Circuit Court set a signature bond for Sabo's release in Racine County Case 2017 CM 2559.

438. Mr. Sabo signed the signature bond and would have been released, but he remained incarcerated because his probation officer, Agent Megan Erickson, put a hold on him which required his detention in jail, began proceedings to revoke his probation on Fond du Lac County Case 2003 CF 313, and required him to remain in custody while those revocation proceedings were scheduled.

439. Agent Erickson consulted with her supervisor, Assistant Regional Chief Barb Hanson in December, 2017, and January, 2018, in making the determination to revoke Mr. Sabo's probation on Fond du Lac County Case 2003 CF 313, to reject any alternative to revocation, and to hold him in custody while revocation proceedings were pending.

440. The purpose of such review is to assure that only those probationers whose probation should be revoked undergo the revocation process.

441. Defendants Erickson and Hanson could have and should have determined the illegality of Sabo's sentence at any time during his period of supervision and especially on and after December 21, 2017, while they were pursuing their revocation case against Mr. Sabo, but they did not attempt to do so until April 13, 2018.

442. Agent Erickson and Assistant Regional Chief Hanson had a duty of care to each probationer whom they supervised, including John Sabo, to ensure that they were enforcing a lawful sentence.

9

443. Defendants Erickson and Hanson failed to take steps necessary to check the legality of Mr. Sabo's probation term on Fond du Lac County Case 2003 CF 313.

444. While John Sabo was in jail, he saw a list of permissible maximum sentences in a law book and that discovery made him realize that his term of probation was longer than allowed by law.

445. He tried to contact Agent Erickson to discuss that with her, but she refused to come to see him.

446. Mr. Sabo's fiancée, Debbie Hasko, called Agent Erickson several times in an effort to give her John's message that his probation should have been terminated, but Agent Erickson never took Ms. Hasko's calls or returned her calls.

447. It was not until April 13, 2018, that Agent Erickson, at the urging of John Sabo's attorney, made inquiry of DOC Records personnel on the legality of the length of Sabo's probation, which inquiry eventually made its way to the desk of Advanced Corrections Sentencing Associate Janelle Nehring.

448. Ms. Nehring sent an email to Agent Erickson on April 13, 2018, confirming that three years was the maximum lawful term of probation that Mr. Sabo could have received on Fond du Lac County Case 2003 CF 313.

449. Ms. Nehring suggested that Sabo's attorney would have to petition the judge in order to have the sentence corrected.

450. Agent Erickson passed the information along to Mr. Sabo's attorney and her supervisor Barb Hanson, but even though she and Ms. Hanson knew for certain, as of April 13, 2018, that John Sabo should not even have been on probation, let alone been revoked and held in custody, and even though they could have secured his immediate release from jail by the simple expedient of withdrawing their probation hold, they did not release him from custody for another three weeks, until May 3, 2018.

451. Even though Ms. Nehring knew for certain, as of April 13, 2018, that John Sabo should not even have been on probation, let alone been revoked and held in custody, she took no steps to facilitate his immediate release from custody.

452. John Sabo was held in Racine County Jail from December 21, 2017, until May 3, 2018, a period of 134 days.

453. Had the probation hold not been a factor, he would have been released after only one day in jail.

454. Because he was incarcerated, John Sabo lost his job, and without employment or income, he fell behind on his obligations and had to file for relief in bankruptcy court.

455. Mr. Sabo and Ms. Hasko were no longer able to afford the duplex in which they had been living and had to move in with Ms. Hasko's mother.

456. While he was incarcerated, Mr. Sabo was robbed and repeatedly threatened by another inmate.

11

457. While he was incarcerated, John Sabo received substandard medical care, was deprived of the medications his regular doctor had prescribed, and suffered severe headaches as well as a head injury and exacerbation of previous injuries to his back, neck, and shoulder.

## V. VIOLATIONS OF LAW

501. Defendants Hicks violated John Sabo's right to be free from cruel and unusual punishment, in violation of Eight Amendment to the United States Constitution, and deprived Mr. Sabo of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when, as a result of her deliberate indifference she failed to note and/or correct his patently illegally long term of probation, resulting in his spending 291 days being supervised beyond the legal termination of his period of probation, 133 days of which he was held in jail.

502. Defendants Erickson and Hanson violated John Sabo's right to be free from cruel and unusual punishment, in violation of Eight Amendment to the United States Constitution, as a result of their deliberate indifference, when they restrained his liberty by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required his probation to terminate.

503.  Defendants Hicks, Erickson, and Hanson deprived Mr. Sabo of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when they restrained the Plaintiff's liberty, by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required probation to terminate.

504. By unlawfully detaining the Plaintiff at the Racine County Jail, Defendants Erickson and Hanson violated Mr. Sabo's right to be free from cruel and unusual punishment, in violation of the Eight Amendment to the United States Constitution.

505. By unlawfully detaining the Plaintiff at the Racine County Jail, Defendants Erickson and Hanson deprived Mr. Sabo of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

506.  By unlawfully detaining the Plaintiff at the Racine County Jail after the date on which they were notified that his term of probation was unlawfully long, Defendants Erickson and Hanson effected an objectively unreasonable seizure of Mr. Sabo, in violation of the Fourth Amendment to the United States Constitution.

507.  As a supplemental state claim, Defendants Sheri Hicks, Megan Erickson, Barb Hanson, and Janelle Nehring were negligent in failing to ascertain and/or to take steps to correct the patent illegality of John Sabo's term of probation.

## VI.   DAMAGES

601.  By virtue of unlawful actions alleged above, Mr. Sabo sustained loss of liberty, economic losses, pain, suffering, mental and emotional distress, and other damages for which he should be compensated in an amount deemed just by the Court.

602.  Because the conduct of Defendants Erickson and Hanson in placing and holding Mr. Sabo in custody for a violation of probation when he should not even have been on probation, and especially in continuing to hold John Sabo in custody for three weeks after they had been officially informed that his period of probation should have already terminated, exhibited deliberate and reckless disregard for the Plaintiff's fundamental rights, the Plaintiff seeks an award of punitive damages against those Defendants to deter them, and others similarly situated, from similar wrongful acts and omissions in the future.

## VII.   CONDITIONS PRECEDENT

701.  All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendants, awarding him:

14

801. Monetary damages in an amount that will fairly compensate the Plaintiff for his injuries;

802. His costs, attorneys' fees, and litigation expenses as well as any further relief that this Court deems just.

Dated this 11th day of May, 2020

Respectfully submitted,

John Sabo,

Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S. C.
ATTORNEYS FOR PLAINTIFF
Jeff Scott Olson
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, Wisconsin 53703
Phone   (608) 283-6001
Fax       (608) 283-0945
Email    JSOlson@scofflaw.com

/s/ Jeff Scott Olson

_____

Jeff Scott Olson

15