# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN SABO,

                **Plaintiff,**

      **v.**                              **Case No. 20-CV-718**

SHERI HICKS, et al.,

                **Defendants.**

## DECISION AND ORDER

### 1. Facts and Procedural History

It is undisputed that a Fond du Lac county circuit court judge sentenced John Sabo to a term of probation in excess of the statutory maximum. (ECF No. 16 at 1.) The judge, of course, is immune from liability for his error, *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 290 (1991), and Sabo does not allege otherwise. Rather, Sabo alleges that various employees of the Department of Corrections are liable for not having recognized and corrected the judge's error sooner than they did.

According to the amended complaint that Sabo filed in this court, he was sentenced on November 30, 2004, by the Fond du Lac County Circuit Court to three years in prison and two years on extended supervision. (ECF No. 10, ¶¶ 401-02.) The court

stayed that sentence and placed Sabo on probation for five years. (ECF No. 10, ¶ 402.) However, under the law in force at the time of the crime, the maximum term of probation the court could impose was three years. (ECF No. 10, ¶ 405.) Because the court ordered Sabo's sentence to run consecutively to any other sentence, Sabo did not begin serving his sentence until July 20, 2014. (ECF No. 10, ¶ 423.)

Debra Haley and Sheri Hicks were employees of the Wisconsin Department of Corrections' Central Records Bureau who, at the time of Sabo's sentence, reviewed each judgment of conviction of people placed on probation. (ECF No. 10, ¶ 407.) If either found that a probation term ordered for a particular probationer was unlawfully long, she would cross out the unlawful probation term, write in the maximum lawful term, make two copies of the judgment of conviction, retain one copy with the Central Records Bureau, and send the other copy to the probationer's supervising probation agent. (ECF No. 10, ¶¶ 412-15.) At the time Sabo was sentenced to probation, Haley and Hicks misunderstood how to calculate the maximum length of probationary sentences for felonies. (ECF No. 10, ¶ 417.) When they learned of their misunderstanding in 2005, they did not go back and review the judgments that they had previously processed to determine whether any of them were unlawfully long. (ECF No. 10, ¶ 420.)

Sabo's probation, having commenced on July 30, 2014, should have concluded three years later, in July of 2017. (ECF No. 10, ¶¶ 423-24.)

On December 21, 2017, Sabo was arrested and charged with a misdemeanor. (ECF No. 10, ¶ 445.) Although the court in the misdemeanor action had granted him release on a signature bond, Sabo remained in custody pursuant to a probation hold. (ECF No. 10, ¶¶ 445-47.) Sabo's supervising probation officer, Megan Erickson, and her supervisor, Barb Hanson, recommended that Sabo's probation be revoked and that he remain in custody pending revocation. (ECF No. 10, ¶ 447-48.)

While incarcerated Sabo learned that his probation sentence was unlawfully long. (ECF No. 10, ¶ 454.) He attempted to contact Erickson, but she refused to come see him. (ECF No. 10, ¶ 455.) Sabo's fiancé also attempted to contact Erickson, but Erickson never returned her calls. (ECF No. 10, ¶ 456.) It was not until April 13, 2018, in response to an inquiry from Sabo's attorney, that Erickson confirmed that the maximum term of probation to which Sabo could have been sentenced was three years. (ECF No. 10, ¶ 458.) After contacting Advanced Corrections Sentencing Associate Janelle Nehring and confirming that the maximum term of probation was three years, Erickson advised Sabo's attorney to petition the court to correct the sentence. (ECF No. 10, ¶¶ 457-60.) Sabo remained in custody until May 3, 2018. (ECF No. 10, ¶ 460.)

Sabo alleges that, by subjecting him to an unlawfully long term of probation and holding him in custody for a portion of that time, the defendants violated his constitutional rights regarding due process, unlawful seizure, and cruel and unusual

punishment. (ECF No. 10, ¶¶ 501-07.) He also alleges that the defendants were negligent.

(ECF No. 10, ¶¶ 508-09.)

Specifically, Sabo alleges that Hicks and Haley

- violated his "right to be free from cruel and unusual punishment, in violation of Eight [sic] Amendment to the United States Constitution, and deprived [him] of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when, as a result of their deliberate indifference they failed to take any steps to correct his patently illegally long term of probation, after they realized in 2005, that they had incorrectly analyzed judgments of conviction in 2004, resulting in his spending 291 days being supervised beyond the legal termination of his period of probation, 133 days of which he was held in jail" (ECF No. 10, ¶ 501); and

- "were negligent in failing to ascertain and/or to take steps to correct the patent illegality of John Sabo's term of probation" (ECF No. 10, ¶ 509).

He alleges that Erickson and Hanson

- violated his "right to be free from cruel and unusual punishment, in violation of Eight [sic] Amendment to the United States Constitution, as a result of their deliberate indifference, when they restrained his liberty by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required his probation to terminate" (ECF No. 10, ¶ 502);

- violated his "right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the United States Constitution" "[b]y recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation" (ECF No. 10, ¶ 504);

- deprived him "of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution" "[b]y unlawfully recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation" (ECF No. 10, ¶ 505);

- "exhibited deliberate indifference and violated [his] right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the

United States Constitution" "[b]y failing to take steps to free [him] from detention at the Racine County Jail after the date on which they were notified that his term of probation was unlawfully long" (ECF No. 10, ¶ 506); and

- "effected an objectively unreasonable seizure of Mr. Sabo, in violation of the Fourth Amendment to the United States Constitution" "[b]y failing to take steps to free [him] from detention at the Racine County Jail after the date on which they were notified that his term of probation was unlawfully long" (ECF No. 10, ¶ 507).

Sabo also alleges that Hicks, Erickson, and Hanson deprived him "of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when they restrained [his] liberty, by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required probation to terminate." (ECF No. 10 at ¶ 503.)

Finally, he alleges that Erickson, Hanson, and Nehring "were negligent in failing to ascertain and/or to take steps to correct the patent illegality of [his] term of probation." (ECF No. 10, ¶ 509.)

All defendants have moved to dismiss the amended complaint (ECF Nos. 6, 11, 14; *see also* ECF No. 7 (brief in support)), although they have done so in a convoluted way. Hicks, Erickson, Hanson, and Nehring initially moved to dismiss the complaint on July 29, 2020. (ECF No. 6.) Accompanying that motion was a brief in support. (ECF No. 7.) On August 17, 2020, Sabo filed an amended complaint adding Debra Haley as a defendant (ECF No. 10), mooting the defendants' motion to dismiss. The following day, Erickson, Hanson, Hicks, and Nehring filed a renewed motion to dismiss. (ECF No. 11.) They did

not file a new brief but instead relied on their prior brief. (ECF No. 11.) Sabo responded to the renewed motion to dismiss on September 8, 2020. (ECF No. 12.) On September 22, 2020, Haley filed a document captioned, "Defendant Debra Haley's Motion Joining Co-Defendants' Motion to Dismiss," but docketed it as "Motion to Dismiss by All Defendants." (ECF No. 14.) In her motion Haley asserts that "Plaintiff's claims against Defendant Debra Haley are the same as those against Defendant Hicks" and, therefore, she "joins in, and incorporates by reference, all of Defendant Hicks's arguments for dismissal of the Amended Complaint." (ECF No. 14.)

If Sabo disagreed as to the similarity of his claims against Haley and Hicks or had any arguments specific to Haley, he had 21 days in which to respond to Haley's motion. *See* Civ. L.R. 7(b). He has not done so. On September 22, 2020, the defendants submitted a reply in support of their motions to dismiss. (ECF No. 16.)

Although all parties to the initial complaint consented to the full jurisdiction of this court (ECF No. 3, 8), Haley failed to timely file her own consent form. Following a reminder from the Clerk, Haley has now consented, and the defendants' motions are ready for resolution.

## 2.  Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 3. Analysis

#### 3.1. Expiration of Sentence

Hicks, Haley, Erickson, and Hanson argue that Sabo's claims fail because he was not held in custody past his sentence expiration date. They argue that the Department of Corrections is required to keep a person in custody until the expiration of his sentence. Thus, Sabo's claims fail because he does not allege that his sentence expired before he was released from custody. (ECF No. 7 at 7-8 (quoting *Stein v. Ryan*, 662 F.3d 1114, 1120 (9th Cir. 2011); *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085, at *9 (E.D. Wis. Jan. 13, 2020)).) Rather, Sabo was released promptly after the circuit court amended the judgment of conviction.

In *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085 (E.D. Wis. Jan. 13, 2020), Williams had been sentenced to an impermissibly long term of extended supervision. He sued certain employees of the Department of Corrections for having been

7

detained after his extended supervision should have expired. The court granted the defendants' motion for summary judgment, holding that, until the court amended the judgment of conviction, the defendants were obligated to hold Williams in custody. Once the amended judgment reached Williams's supervising agent, she immediately released Williams from custody. The court held that no reasonable finder of fact could conclude that the defendants acted with deliberate indifference.

As indicated, *Williams* was before the court on a motion for summary judgment. Thus, the court was assessing the sufficiency of the evidence. On a motion to dismiss, the court is assessing the sufficiency of the complaint's allegations. Moreover, Williams failed to respond to the defendants' proposed findings of fact, resulting in the court deeming all of those facts admitted.[1] *Williams*, 2020 U.S. Dist. LEXIS 5085, at *2 n.2. Consequently, the court accepted that the Department of Corrections lacked any authority to essentially shorten Williams's sentence without first having the court amend the judgment of conviction.

However, Sabo alleges that Haley and Hicks were assigned the responsibility of reviewing probationary judgments for compliance with the law and were required to correct unlawfully long sentences. Moreover, Sabo notes that, pursuant to Wis. Stat.

---

[1] Sabo also argues that the court should afford little weight to *Williams* because it was prosecuted by "a prison inmate who filed suit *pro se*." (ECF No. 12 at 7.) But that is incorrect. Williams was represented by counsel throughout the case, and there is no indication that he was incarcerated. *See generally, Williams v. Litscher,* Case No. 18-CV-583 (E.D. Wis.).

§ 973.09(2m), any probationary sentence "in excess of the maximum authorized by statute … is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings." Thus, Sabo alleges there is no need for the court to amend the judgment before the Department of Corrections can remedy an unlawful sentence.[2] Either Erickson or Hanson could have acted independently to have Sabo released from custody.

In their reply brief the defendants argue that, because Wis. Stat. § 973.09(2m) is silent "as to *who* determines whether the sentence imposed exceeds the statutory maximum," "[t]he only reasonable and common sense reading of the statute is that a court must make the determination that the sentence imposed is excessive." (ECF No. 16 at 4 (emphasis in original).) This argument overlooks Sabo's allegation that the Department of Corrections, by Haley and Hicks, routinely modified unlawfully long probationary sentences without action by the circuit court. (ECF No. 10, ¶ 411-16.) It was only as a "courtesy" that the Department of Corrections notified the sentencing judge that it had modified the sentence. (ECF No. 10, ¶ 415.) In essence, Sabo's allegations suggest that even the Department of Corrections has disavowed the interpretation of the statute the defendants advance here.

---

[2] Non-probationary sentences that are in excess of the statutory maximum are similarly "commuted without further proceedings" under Wis. Stat. § 973.13, but Williams did not address the statute (*see* Case No. 18-CV-853, ECF No. 31 (plaintiff's brief in response to defendants' motion for summary judgment)), and thus neither did the court, *Williams*, 2020 U.S. Dist. LEXIS 5085.

Simply because Sabo was promptly released after the court amended the judgment of conviction does not necessarily preclude his claims against Haley, Hicks, Erickson, or Hanson. Sabo has adequately alleged that, by operation of Wis. Stat. § 973.09(2m), even before the court amended the judgment of conviction his custody was unlawful and the defendants could have prevented or terminated his unlawful custody.

**3.2. Absolute Immunity as to Erickson and Hanson**

Erickson and Hanson argue that they are entitled to absolute immunity "because in placing and maintaining Sabo's probation hold, Erickson and Hanson were engaged in a quasi-judicial function for which they are protected by absolute immunity." (ECF No. 7 at 18.)

The court looks "to the nature of the function performed, not the identity of the actor who performed it," to assess questions of absolute immunity. *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996)). Thus, "probation officers are absolutely immune from suits challenging conduct intimately associated with the judicial phase of the criminal process." *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018). Therefore, if a probation officer issues a detainer authorizing the continued detention of a probationer, she is absolutely immune for that action. *Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) (citing *Walrath v. United States,* 35 F.3d 277, 282 (7th Cir. 1994)); *see also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008) (parole officer absolutely immune for

decision to place a parole hold on plaintiff). A probation officer's motives for taking such actions are irrelevant to the question of absolute immunity. *Tobey*, 890 F.3d at 649.

In his amended complaint Sabo alleges:

504. By recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation, Defendants Erickson and Hanson violated Mr. Sabo's right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the United States Constitution.

505. By unlawfully recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation, Defendants Erickson and Hanson deprived Mr. Sabo of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

(ECF No. 10, ¶¶ 504-05.)

Sabo asserts that the record is not yet sufficiently developed to permit the court to decide the question of absolute immunity. (ECF No. 12 at 17.) But he also argues that a "recommendation" that a probationer be detained is not a quasi-judicial act, like an "order" or a "decision." Additionally, Sabo argues that, because his probation had expired, Erickson's and Hanson's actions were without jurisdiction and therefore not subject to absolute immunity. (ECF No. 12 at 19 (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991) ("a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction")).)

In *Johnson v. Root*, 812 F. Supp. 2d 914, 920 (N.D. Ill. 2011), the court accepted the plaintiff's argument that a probation agent who merely "requested the court to issue a

warrant for Johnson to appear and answer the allegations at a hearing to determine whether his probation should be revoked or modified" was not entitled to absolute immunity because such a request was not akin to a judicial act. *Id.* (citing *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (noting that, because the parole officer merely recommended that a warrant be issued rather than "make an adjudicative decision to revoke" the plaintiff's parole, the act was not functionally comparable to that of a judge); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) (granting absolute immunity to parole board members for quasi-judicial act of revoking parole, but denying immunity to parole officer who recommended revocation)).

The Court of Appeals for the Seventh Circuit, however, has rejected this view, holding that a probation officer "filing the memoranda *requesting* that the state's attorney begin proceedings to revoke probation" was "a quasi-judicial function for which she is protected by absolute immunity." *Tobey*, 890 F.3d at 650 (emphasis added); *see also Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989) (quoting *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) (holding that absolute immunity extends to "not only the actual decision to revoke parole, but also the activities that are part and parcel of the decision process")); *Mays v. Johnson*, No. 18-CV-1769, 2020 U.S. Dist. LEXIS 151634, at *9 (E.D. Wis. Aug. 20, 2020) (holding that agent was absolutely immune for her "decision to recommend revoking [plaintiff's] extended supervision and incarcerating him"); *Weso v. Thomson*, No. 19-C-404, 2020 U.S. Dist. LEXIS 115177, at *9 (E.D. Wis. June 29, 2020)

(finding absolute immunity for parole agent who "recommended that [plaintiff]'s extended supervision be revoked and that he be incarcerated" and supervisor who "approved [agent]'s recommendation and requested a hearing").

As for Sabo's argument that Erickson and Hanson are not absolutely immune because his probation term had expired, such an error is not akin to an act done in "the clear absence of all jurisdiction." There is not a "clear absence of all jurisdiction" simply because an act "was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105 (1978).

There is no doubt that, if Sabo had attempted to sue the judge who mistakenly sentenced him to an unlawfully long term of probation, the judge would be absolutely immune. For the same reason, the officials who, in reliance on that judgment and without reason to suspect error, acted to revoke his probation are absolutely immune. In light of the court's holding in *Tobey* that recommending the revocation of probation is a quasi-judicial act, the court cannot reach any other conclusion. At most, Erickson and Hanson made an error and acted in excess of their authority; they did not act in a "clear absence of all jurisdiction."

Thus, the claims set forth in paragraphs 504 and 505 of the amended complaint are barred. Erickson and Hanson are absolutely immune from suit as to these claims.

A closer question is whether Erickson and Hanson are also absolutely immune for maintaining the probation hold after they recognized that the probation term the court

imposed was unlawfully long and that Sabo's probation had expired. Rather than immediately releasing Sabo as he alleges they should have pursuant to Wis. Stat. § 973.09(2m), they waited for the court to amend the judgment.

The defendants argue that "Erickson, Sabo's probation agent, and Hanson, the Assistant Regional Chief, are absolutely immune from Sabo's claims because the actions of which Sabo complains, placing and maintaining Sabo's probation hold, are quasi-judicial functions protected by absolute immunity." (ECF No. 16 at 11.) But the authority they present addresses only qualified immunity for "placing" a hold; they do not present any authority or argument addressing absolute immunity for "maintaining" a hold after realizing that the probation term was unlawfully long. "Maintaining" a hold might be seen as inseparable from "placing" a hold, in which case it might be easiest to frame the analysis in terms of whether Erickson and Hanson would be entitled to absolute immunity had they placed the hold knowing that the court had sentenced Sabo to an unlawfully long term of probation. But the defendants do not develop such an argument.

At this stage of the proceedings, and based on the record presently before the court, Erickson and Hanson have not demonstrated that continuing the hold after they recognized that Sabo's probation term was unlawfully long was a quasi-judicial act for which they enjoy absolute immunity. Therefore, the court must conclude that the claims set forth in paragraphs 506 and 507 of the amended complaint are not at this time subject to dismissal on the basis of absolute immunity.

### 3.3. Eighth Amendment Claim Against Hicks and Haley

"Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902-03 (7th Cir. 2016) (citing *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Id.* at 903. "A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred. *Id.* (citing *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Burke*, 452 F.3d at 669).

The defendants argue that "simply showing that someone made a mistake in calculating an inmate's release date is not a sufficient basis for imposing liability under Section 1983." (ECF No. 7 at 9.) Because Sabo does not allege that Hicks or Haley knew that Sabo's probation term was incorrect, they cannot be said to have acted with deliberate indifference. (ECF No. 7 at 10.)

The defendants are correct insofar as they note that a mistake in calculating a sentence is not deliberate indifference, *see Shesler v. Sanders*, No. 13-cv-394-jdp1, 2014 U.S. Dist. LEXIS 158784, at *16-24 (W.D. Wis. Nov. 6, 2014), and there is no allegation that Hicks or Haley knew of the error in Sabo's judgment of conviction. Sabo does not argue

otherwise. But that is not the nature of Sabo's Eighth Amendment claim against Hicks and Haley. Sabo alleges that Haley and Hicks acted with deliberate indifference when, after recognizing that they had a long been incorrectly reviewing the lawfulness of judgments, they failed to go back and review prior judgments or otherwise take remedial action. In other words, knowing that for years they had misunderstood how to calculate the maximum length of probationary sentences for felonies, they failed to review prior judgments to determine whether any included terms of probation that were unlawfully long.

Thus, as alleged in the complaint, Haley and Hicks knew that it was essentially certain that, due to their misunderstanding of the law, many probationers were subject to unlawfully long sentences. The problem with this theory is that there is no suggestion that Haley or Hicks knew of any likely problem specific to Sabo. The court agrees with Judge Crabb, who held in a factually similar case where Haley was also named as a defendant, "Simply alleging that defendants were aware of the general possibility that prisoners' sentences may be inconsistent with Wisconsin law does not state a claim for deliberate indifference in violation of the Eighth Amendment." *Perrault v. Wisconsin*, No. 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838, at *7-8 (W.D. Wis. Jan. 11, 2016) (citing *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (plaintiffs must demonstrate that defendants had "actual notice of a *specific* risk of serious harm so as to find [defendants] deliberately indifferent"); *James v. Milwaukee County*, 956 F.2d 696, 701 (7th Cir. 1992) (deliberate

indifference claim cannot be predicated merely on knowing of general risks of violence in prison)).

Nor is this a case where deliberate indifference could be inferred from a pattern of negligent acts. *See Shesler*, 2014 U.S. Dist. LEXIS 158784, at *24. Although Haley and Hicks allegedly repeatedly failed to identify errors in probationary sentences, that was a product of a single common error regarding how to calculate the maximum sentences, which is not evidence of a pattern of errors. *See id.* And their failure to review past judgments once they realized their error, although likely affecting many probationers, was again a single act. Consequently, Sabo's Eighth Amendment claim against Haley and Hicks (ECF No. 10, ¶ 501) must be dismissed.

### 3.4. Qualified Immunity

In much the same way that a criminal defendant has the right to fair notice that his conduct is unlawful before he can be prosecuted, "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "A public official defendant is entitled to qualified immunity unless two disqualifying criteria are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020) (citing *Stainback v. Dixon*, 569 F.3d 767, 770 (7th

Cir. 2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "It is the plaintiff['s] burden to demonstrate that a constitutional right is clearly established." *Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000).

That does not mean that a plaintiff must be able to point to a case directly on point. Rather, it means that he must show that existing precedent has "placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is an affirmative defense, and as such a plaintiff need not plead around it in his complaint. *Gamble v. Cnty. of Cook*, No. 1:19-cv-4297, 2020 U.S. Dist. LEXIS 169553, at *10 (N.D. Ill. Sep. 16, 2020); *see also Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020). Thus, "dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiff['s] well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson*, 967 F.3d at 590 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). Because at the motion to dismiss stage a plaintiff need only show the plausibility of his claim, complaints generally are "not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Hanson*, 967 F.3d at 597 (quoting *Alvarado*

*v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). Since qualified immunity often depends on the unique facts of a particular case, it is often most appropriately addressed at the summary judgment stage. *See id*.

### 3.4.1. Failure to Identify the Error in the Judgment

An initial challenge for the court with many questions of qualified immunity is determining "the appropriate level of specificity" at which "[t]he right allegedly violated must be defined." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Sabo claims that Erickson and Hanson violated the Eighth (ECF No. 10, ¶ 502) and Fourteenth (ECF No. 10, ¶ 503[3]) Amendments when they subjected him to supervision without confirming that his probation term did not exceed that authorized by law. The defendants frame this claim in terms of liability for "failing to discover the sentence error on their own." (ECF No. 7 at 20-21.) Sabo suggests only that it was clearly established that a person cannot be held in custody past the expiration of his sentence. (ECF No. 12 at 21.)

The relevant question is whether it was clearly established that a probation officer violates the Eighth or Fourteenth Amendments when she fails to verify the lawfulness of

---

[3] Sabo also names Hicks in this paragraph, but this appears to have been an error, a conclusion bolstered by the absence of Haley who otherwise is named in conjunction with the allegations against Hicks. The operative allegations in the paragraph are that the named defendants "restrained the Plaintiff's liberty, by continuing to limit and supervise his activities as conditions of probation ...." (ECF No. 10, ¶ 503.) But Hicks was an administrative employee of the Central Records Unit. (ECF No. 10, ¶ 407.) To the extent that the inclusion of Hicks in this paragraph was not an error, the claim fails because there is no allegation that Hicks had any involvement in the supervision of Sabo.

Case 2:20-cv-00718-WED   Filed 11/12/20   Page 19 of 32   Document 19

the probationer's sentence and, as a result, subjects the probationer to supervision for a term in excess of that authorized by law.

In response to the defendants' motion to dismiss, Sabo has failed to offer any authority suggesting that a probation officer has a clearly established obligation to verify the lawfulness of a judge's sentence. Rather, in the amended complaint he alleges simply that, "[a]t a minimum, Defendants Erickson and Hanson should have determined if John Sabo was legally on probation before recommending revocation proceedings." (ECF No. 10, ¶ 450.) This normative assertion, however, does not suggest that there exists any clearly established obligation to do so. More than failing to suggest a violation of clearly established law, Sabo's allegation does not state a claim for relief. *See Perrault*, 2016 U.S. Dist. LEXIS 2838, at *6.

A probation officer is not required to verify the lawfulness of the court's sentence. *Perrault*, 2016 U.S. Dist. LEXIS 2838, at *6. Therefore, Hanson and Erickson are entitled to qualified immunity with respect to Sabo's claims that they violated the Eighth and Fourteenth Amendments by subjecting him to supervision beyond the maximum term authorized under law. Hanson and Erickson cannot be held personally liable because they, without having reason to suspect an error, subjected Sabo to supervision for the term ordered by the court. Accordingly, the court must dismiss the claims set forth in paragraphs 502 and 503 of the amended complaint.

### 3.4.2.  Failure to Release Sabo From Custody

Sabo also alleges that Erickson and Hanson violated the Eighth (ECF No. 10, ¶ 506) and Fourth (ECF No. 10, ¶ 507) Amendments by not immediately releasing him from custody once they learned that his probation term was unlawfully long, and instead waiting for the court to enter an amended judgment of conviction. The defendants frame the issue as whether it was clearly established that "enforcing the probation term in the original order and not lifting the probation hold prior to the amended judgment" would violate the constitution. (ECF No. 7 at 21.)

Sabo argues that, "In Wisconsin it has been established for nearly twenty years that the curtailment of liberty beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." (ECF No. 12 at 20 (citing *Campbell*, 256 F.3d at 700). Thus, according to Sabo, the relevant question is whether it violates the Eighth Amendment to hold a person in custody beyond the expiration of his sentence.

But in *Campbell* the court rejected the plaintiff's contention that the issue was simply whether "it was clearly established that incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment as cruel and unusual punishment." *Campbell*, 256 F.3d at 700. The court said that the relevant question was "whether it was clearly established that the defendants, in revoking the good conduct credits and computing a new release date after the

21

recommitment, were violating Campbell's constitutional rights by requiring him to serve more time than state law and his sentence required." *Id.* at 700-01. It concluded:

> At the time of the revocation of Campbell's credits, it was not apparent that this kind of state law mistake rose to the level of an Eighth Amendment violation. The record shows that the prison officials were indeed responding to Campbell's inquiries, even if ultimately in a mistaken way. The relevant statute, 730 ILCS § 5/3-3-9, does not clearly establish the rules for computing release times. Section 5/3-3-9(a) (3)(i)(B) simply states that, at the time of recommitment, "the Board may also order that a prisoner serve up to one year of the sentence imposed by the court which was not served due to the accumulation of good conduct credit." The statute does not expressly prohibit revocation of credits while the prisoner is serving the recommitment term.

*Id.* at 701.

Consistent with *Campbell*, the court agrees that the appropriate question is not simply whether incarcerating a person beyond the expiration of his sentence violates the Eighth Amendment. Rather, as to the claims alleged in paragraphs 506 and 507 of the amended complaint, the issue is whether it was clearly established that a probation officer (or her supervisor) violates the Fourth and Eighth Amendments when, after recognizing that a sentence is unlawfully long, she does not immediately act to release the defendant.

Sabo argues that, unlike the statutes at issue in *Campbell* that the court described as unclear, the statute at issue here is clear that it was unnecessary for Erickson or Hanson to wait for the court to amend the judgment of conviction before releasing him. The statute, however, is not beyond all ambiguity. As the defendants note, the statute is silent as to who must decide that the court has imposed a term of probation beyond the

maximum authorized by law such that the excess "term is commuted without further proceedings." Wis. Stat. § 973.09(2m).

On the one hand, the Wisconsin Court of Appeals has stated:

We note that Wis. Stat. § 973.09(2m) provides that a probation term in excess of the maximum is void and the term is valid only to the extent of the maximum term authorized by statute. That might suggest that a remand for entry of an amended judgment is not necessary. Nonetheless, we deem it the better practice to have the record reflect a judgment of conviction that correctly states the term of [the defendant's] probation ….

*State v. Oglesby*, 2006 WI App 95, ¶16 n.5, 292 Wis. 2d 716, 724, 715 N.W.2d 727, 731; *see also State v. Stewart*, 2006 WI App 67, ¶¶ 9, 22, 291 Wis. 2d 480, 487, 713 N.W.2d 165, 169 (stating that defendant's eight-year term of probation is commuted to five years and ordering, "On remand, the trial court shall enter amended judgments of conviction consistent with this opinion"); *cf. State v. Spaeth*, 206 Wis. 2d 135, 156, 556 N.W.2d 728, 737 (1996) (directing circuit court to enter an amended judgment of conviction under Wis. Stat. § 973.13 to correct an illegal sentence); *State v. Lynch*, 2015 WI App 37, ¶¶ 12-13, 363 Wis. 2d 654, 862 N.W.2d 902, 2015 Wisc. App. LEXIS 170 (unpublished) (denying claim that trial court erred by amending judgment of conviction pursuant to Wis. Stat. § 973.13 to reflect only the legally permissible term of extended supervision). Although not stating that an amended judgment was required before a probationer could be released from custody, the Wisconsin Court of Appeals' comments tend to support the defendants' view that it was appropriate to wait for an amended judgment of conviction before releasing Sabo.

23

On the other hand, Sabo has alleged that the Department of Corrections had a practice of interpreting this statute to allow administrative employees such as Hicks and Haley to amend sentences that they found to be in excess of the statutory maximum. If administrative employees could correct unlawful sentences under Wis. Stat. § 973.13(2m) without involving the court, a plausible inference is that probation officers such as Erickson or Hanson could do so as well. Sabo argues as much, albeit without any citation to authority. (ECF No. 12 at 12 ("Hanson had the same power as did Hicks and Haley to declare the excess of Sabo's probation term void.").)

At the motion to dismiss stage these allegations are sufficient to state a claim. Whether probation officers possessed such authority, under both law and Department policy, are matters the court cannot resolve on a motion to dismiss. Sabo has adequately alleged that a reasonable person in Hanson's or Erickson's position would have known not only that detaining a person beyond the expiration of his sentence violated the Eighth Amendment but that the unlawful portion of his sentence was automatically commuted. Therefore, the probationer could be released from custody without waiting for an amended judgment of conviction. Neither Hanson nor Erickson are entitled to qualified immunity at this stage with respect to Sabo's claims that they violated the Eighth Amendment by continuing to hold him in custody after they learned that his probation sentence was unlawfully long and had expired. (ECF No. 10, ¶ 506.) For the same reason,

the parallel claim under the Fourth Amendment (ECF No. 10, ¶ 507) is not subject to dismissal on this basis.

### 3.5. Deliberate Indifference—Erickson and Hanson

As noted above, an Eighth Amendment claim may proceed only if the defendants acted with deliberate indifference. *Figgs*, 829 F.3d at 902-03. Erickson and Hanson argue that the complaint does not adequately allege that they acted with deliberate indifference once they learned of the error in Sabo's sentence. (ECF No. 7 at 11-12.) To the contrary, they argue that the "[c]omplaint demonstrates that upon being notified of the alleged error in Sabo's probation term, Erickson acted promptly to correct it," including contacting the Records Office and forwarding information to Sabo's attorney. (ECF No. 7 at 12.) "The delay between April 13, 2018, and May 3, 2018, is attributable to the process that was required to amend Sabo's judgment of conviction, and not any inaction on Erickson's or Hanson's part." (ECF No. 7 at 12.)

Sabo responds, "That they were content to allow him to remain in custody on a probation hold while awaiting action from the sentencing court, action that, due to the operation of Wis. Stat. § 973.09, was not necessary in order to effect his release, is the epitome of deliberate indifference." (ECF No. 12 at 13.) At a minimum, he argues, Erickson or Hanson could have released him from custody while the process to amend the judgment was completed. (ECF No. 12 at 14.)

Deliberate indifference may be found not only when a defendant does nothing. Actions that are so ineffectual that they are the equivalent of doing nothing may also evidence deliberate indifference. *Figgs*, 829 F.3d at 903. Thus, the fact that Erickson and Hanson did *something* upon learning of the error does not foreclose a finding that they were deliberately indifferent. For example, a physician may exhibit deliberate indifference if he "chooses an easier and less efficacious treatment without exercising professional judgment." *Arnett*, 658 F.3d at 754.

Granted, the fact that Erickson and Hanson sought to obtain the input of the court and took steps toward this end tends to undermine the deliberate indifference claim. *See Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993) (finding that parole board officials did not act with deliberate indifference in delaying inmate's release by five months because they had asked the court to clarify its order); *see also Schneider v. Cnty. of Will*, 528 F. App'x 590, 594 (7th Cir. 2013). However, these actions do not necessarily negate the possibility that they were deliberately indifferent.

Underlying the parties' positions on this issue is a dispute over what was required before Sabo could be released. It is plausible that discovery will lead to evidence that supports the conclusion that Erickson or Hanson were deliberately indifferent by choosing to hold Sabo in custody pending the court amending the judgment of conviction. Therefore, at this stage, the court cannot dismiss Sabo's Eighth Amendment claims against Erickson and Hanson.

### 3.6. State Law Claims—Governmental Immunity

Sabo's amended complaint contains two state law negligence claims. He alleges that "Defendants Sheri Hicks, Debra Haley, were negligent when they analyzed judgments of conviction, including the judgment of conviction of John Sabo, based on an erroneous understanding of the law." (ECF No. 10, ¶ 508.) And Sabo alleges "Megan Erickson, Barb Hanson, and Janelle Nehring were negligent in failing to ascertain and/or to take steps to correct the patent illegality of John Sabo's term of probation." (ECF No. 10, ¶ 509.)

"The rule of governmental immunity provides that state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Pries v. McMillon*, 2010 WI 63, ¶20, 326 Wis. 2d 37, 51, 784 N.W.2d 648, 654; *see also* Wis. Stat. § 893.80. "The rule of immunity is subject to exceptions, which seek to balance the rights of injured parties to seek compensation with the need for public officers and employees to perform their duties freely." *Pries*, 2010 WI 63, ¶21. "A defense of governmental immunity for public employees focuses on whether the action or inaction upon which liability is premised is entitled to immunity." *Id.* at ¶19.

"[A] state officer or employee will not be 'shielded from liability for the negligent performance of a purely ministerial duty.'" *Pries*, 2010 WI 63, ¶22 (quoting *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151, 156 (1996)). "[A] duty is ministerial if it is 'absolute, certain and imperative, involving merely the performance of a specific task when the law

imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" *Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶41, 387 Wis. 2d 475, 492, 929 N.W.2d 547, 555 (quoting *Pries*, 2010 WI 63, ¶22). "Stated differently, a duty is regarded as ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Id.* (quoting *Pries*, 2010 WI 63, ¶22). "For a duty to be ministerial, 'a public officer must be not only bound to act, but also bound by law to act in a very particular way.'" *Id.* at ¶45 (quoting *Yao v. Chapman*, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272). "In contrast, a discretionary act 'involves the exercise of judgment in the application of a rule to specific facts.'" *Id.* at ¶41 (quoting *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, 235 Wis. 2d 409, 424, 611 N.W.2d 693, 700).

The defendants argue:

Defendants are not aware of, and Sabo has not cited in the Complaint, any statute or regulation that obligated them in "absolute and certain" terms to review the lawfulness of Sabo's probation term and/or take steps to correct any errors in the judgment. Because Defendants were not under any legal obligation to perform the allegedly negligent acts pled in the Complaint, the acts (or lack thereof) were purely discretionary and thus immune from liability. Sabo's negligence claims are barred by governmental immunity and should be dismissed.

(ECF No. 7 at 25.)

Sabo argues that Wis. Stat. § 973.09(2m) imposed a non-discretionary duty that each defendant had to follow. (ECF No. 12 at 25.) The statute, however, cannot be fairly read as imposing any sort of ministerial duty on any defendant. It most certainly did not create a duty for any defendant to investigate the lawfulness of Sabo's sentence. Even once Erickson, Hanson, and Nehring allegedly learned that the sentence was unlawfully long, none of the defendants had a ministerial duty under the statute to release Sabo from custody. *Cf. Baumgardt v. Wausau Sch. Dist. Bd. of Educ.*, 475 F. Supp. 2d 800, 811 (W.D. Wis. 2007) (discussing Wisconsin's statute regarding mandatory reporting of child sexual abuse as a statute creating a ministerial duty). The statute is silent as to who is to determine whether a sentence has exceeded the maximum term allowed under law. At a minimum, how to proceed under the statute involved the exercise of discretion, thus placing it outside the scope of the ministerial duty exception. Therefore, the negligence claim against Erickson, Hanson, and Nehring (ECF No. 10, ¶ 509) must be dismissed because the defendants are immune from suit for this claim.

As for Hicks and Haley, Sabo alleges that they had a ministerial duty to review judgments of convictions for accuracy, and this responsibility was set forth in their position descriptions. First, a ministerial duty "must arise from some obligation created by law." *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 92, 596 N.W.2d 417, 423 (1999). There is no allegation that the Department of Corrections was obligated by law to review the lawfulness of sentences imposed by courts. *Cf. id.* at 92, 596 N.W.2d at 423 (finding

immunity in part because school district was not obligated to hire a benefits specialist to advise its employees). This is not a situation where it can be said that, by having chosen to act, Hicks and Haley had a ministerial duty to avoid performing the act negligently. *See id.* at 93, 596 N.W.2d at 423 (discussing cases). Nor can it be said that reviewing judgments for conformity with state statutes is a ministerial duty. Such actions necessarily involve applying the law to particular facts, which is a hallmark of a non-ministerial act. *See id.* at 92, 596 N.W.2d at 423. This is true even when a plaintiff argues that the statutes are unambiguous. *Id.*; *see also Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶29, 262 Wis. 2d 127, 144, 663 N.W.2d 715, 723 (holding that guidance counselor advising student to take an unapproved course was not ministerial despite the existence of a form clearly and unambiguously detailing approved and unapproved course). Therefore, the state law negligence claim against Hicks and Haley (ECF No. 10, ¶ 508) must be dismissed. The defendants are immune from suit as to Sabo's common law negligence claims.

### 4. Conclusion

Sabo has failed to adequately allege that Hicks and Haley acted with deliberate indifference toward him when they failed to re-examine the judgments they had reviewed under a mistaken understanding of the law. Therefore, the Eighth Amendment claim alleged in paragraph 501 of the amended complaint must be dismissed. The court must also dismiss the common law negligence claim against Hicks and Haley, alleged in

paragraph 508 of the amended complaint. They are immune from suit pursuant to Wis. Stat. § 893.80 because their review of judgments was not ministerial. Accordingly, Hicks and Haley are dismissed as defendants.

Nehring is also dismissed as a defendant. The only claim against her, a common law negligence claim set forth in paragraph 509 of the amended complaint, must be dismissed because she is immune from suit pursuant to Wis. Stat. § 893.80. This claim also fails as to Erickson and Hanson who are likewise immune from the claim alleged.

Erickson and Hanson are also absolutely immune with respect to the Eighth and Fourteenth Amendment claims alleged in paragraphs 504 and 505 of the amended complaint, and they are entitled to qualified immunity as to the Eighth and Fourteenth Amendment claims in paragraphs 502 and 503 of the amended complaint. Only two claims remain: Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson relating to events after they allegedly learned that Sabo's probationary sentence was unlawfully long, as alleged in paragraphs 506 and 507 of the amended complaint.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss is **granted in part and denied in part**.

It is denied with respect to Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson, as alleged in paragraphs 506 and 507 of the amended complaint. The motion is granted as to all other claims.

Hicks, Haley, and Nehring are dismissed as defendants.

Dated at Milwaukee, Wisconsin this 12th day of November, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge