# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN SABO,**

        **Plaintiff,**

        v.                                     Case No. 20-CV-718

**MEGAN ERICKSON, et al.,**

        **Defendants.**

## DECISION AND ORDER

**1. Facts and Procedural History**

A Fond du Lac county circuit court judge sentenced John Sabo to an unlawfully long term of probation. The error was not recognized until after Sabo's term of probation should have ended and he was arrested on a new charge. Incorrectly believing that Sabo was still on probation, his probation officer, Megan Erickson, and her supervisor, Barb Hanson, recommended that Sabo's probation be revoked and that he remain in custody pending revocation. (ECF No. 10, ¶ 447-48.)

It was during his detention that Sabo learned that his sentence had been longer than that allowed by law and, thus, that his probation had ended long ago. Erickson eventually confirmed that Sabo's sentence was unlawfully long, but even then it still took

more than two weeks until a judge approved a modification of his sentence and he was released from jail.

Sabo filed suit against Erickson and Hanson, as well as Debra Haley and Sheri Hicks, who were employees of the Wisconsin Department of Corrections' Central Records Bureau who Sabo alleged should have caught and corrected the judge's error. He also sued Janelle Nehring, an Advanced Corrections Sentencing Associate with the Department of Corrections, who Sabo alleged also should have corrected the error.

The court granted in part a motion to dismiss filed by the defendants. *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258 (E.D. Wis. Nov. 12, 2020). The court dismissed all claims against Hicks, Haley, and Nehring, dismissing them as defendants. *Id.* at *36. The court also dismissed certain claims under the Eighth and Fourteenth Amendments against Erickson and Hanson. But the court denied the motion to dismiss with respect to "Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson relating to events after they allegedly learned that Sabo's probationary sentence was unlawfully long, as alleged in paragraphs 506 and 507 of the amended complaint." *Id.* at *37.

Sabo has moved the court to reconsider the portions of the court's ruling that dismissed Hicks and Haley as defendants. Specifically, he contends that the dismissal of the negligence and deliberate indifference claims against Hicks and Haley was predicated on manifest errors of law. (ECF No. 21.)

## 2. Reconsideration Standard

"[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (quoting *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). Consequently, "[a] party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269). Nor is reconsideration an "appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. "[D]eveloping an argument for the first time in a motion to reconsider is too late." *Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("[A]ny arguments … raised for the first time in [a] motion to reconsider are waived.")).

3.  **Analysis**

    3.1. **Ministerial Duty**

    Sabo asserted a state law negligence claim against Hicks and Haley. Except for negligence in performing purely ministerial acts, state officers are immune from suit for actions performed within the scope of their official duties. "[A] duty is regarded as ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *32-33 (quoting *Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶41, 387 Wis. 2d 475, 492, 929 N.W.2d 547, 555).

    Sabo argues that Wisconsin courts have taken a broad view of what "law" is in terms of assessing whether an obligation is "imposed by law." (ECF No. 21 at 3.) He argues that, because Hicks's and Haley's job descriptions were produced by the government, they are "law" for purposes of determining whether a ministerial duty existed.

    But whether their job descriptions were "law" or not was beside the point. What mattered was that their jobs required Hicks and Haley to "apply[] the law to particular facts, which is a hallmark of a non-ministerial act." *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *35 (citing *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 92, 596 N.W.2d 417, 423

4

(1999); *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶29, 262 Wis. 2d 127, 144, 663 N.W.2d 715, 723).

For example, the job description of a government attorney may call for the attorney to interpret laws and provide legal advice. Just because those duties are set forth in a job description does not then make the attorney's acts in interpreting and applying the law ministerial. A job description does not transform discretionary duties into ministerial ones. Sabo alleges that Hicks and Haley were negligent in their application of the law to certain facts. (*See, e.g.*, ECF No. 10, ¶¶ 408 (alleging that Hicks's and Haley's jobs included analyzing "the legality of length of the term of probation"); 418 (alleging that Hicks and Haley "realized that they had been analyzing terms of felony probation incorrectly"); 419 (alleging that Hicks and Haley "realized that there were judgments of conviction that they had analyzed in 2004 and earlier in 2005 that contained unlawfully long terms of probation"); and 508 (alleging Hicks and Haley "were negligent when they analyzed judgments of conviction, including the judgment of conviction of John Sabo, based on an erroneous understanding of the law").) Analyzing or applying the law to the facts is not ministerial, even if that law was unambiguous. *Sabo* 2020 U.S. Dist. LEXIS 211258, at *35 (citing *Scott*, 2003 WI 60, ¶29 (holding that guidance counselor advising student to take an unapproved course was not ministerial despite the existence of a form clearly and unambiguously detailing approved and unapproved course). Consequently, no basis

exists for reconsidering the court's conclusion that Hicks and Haley are immune from Sabo's negligence claim.

### 3.2. Deliberate Indifference

Sabo alleged in his amended complaint that

> Hicks and Haley violated John Sabo's right to be free from cruel and unusual punishment, in violation of Eight [sic] Amendment to the United States Constitution, and deprived Mr. Sabo of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when, as a result of their deliberate indifference they failed to take any steps to correct his patently illegally [sic] long term of probation, after they realized in 2005, that they had incorrectly analyzed judgments of conviction in 2004, resulting in his spending 291 days being supervised beyond the legal termination of his period of probation, 133 days of which he was held in jail.

(ECF No. 10, ¶ 501.)

Relying in part on a similar case where Haley was also a defendant, *Perrault v. Wisconsin*, No. 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838 (W.D. Wis. Jan. 11, 2016), the court concluded that Sabo had not adequately alleged that Hicks and Haley were deliberately indifferent. *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *20. At best, they knew that, as a statistical matter, it was likely that some unidentified probationers had been sentenced to unlawfully long terms of probation. But there was no allegation that Hicks and Haley knew that *Sabo's* sentence was unlawfully long. This lack of knowledge specific to Sabo's sentence precluded a claim of deliberate indifference. *Id.* at *19-20 (quoting *Perrault*, 2016 U.S. Dist. LEXIS 2838, at *7-8).

6

The court did not say that, to state a claim under § 1983 generally or the Eighth Amendment specifically, it is always necessary to allege that a defendant official knows the identity of the person likely to be harmed by that official's inaction. In certain instances where the constitution imposes a duty on officials to act to prevent harm, alleged inaction despite knowing of a general harm may be sufficient to state a claim by the person who was ultimately harmed. But the distinction here is that Hicks and Haley did not have a constitutional duty to double-check that circuit judges imposed lawful sentences. Although the Wisconsin Department of Corrections chose to perform that sort of verification as a matter of policy, and assigned the task to Hicks and Haley, that did not create a *constitutional* duty for Hicks and Haley to seek out and correct judges' sentencing errors.

"The administration of a system of punishment entails an unavoidable risk of error." *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). It most likely can be said that it is statistically certain that there are criminal defendants in every state who are subject to unconstitutional deprivations of liberty, including detention beyond the lawful expiration of their sentences. Nonetheless, Sabo has not shown that corrections officials have a constitutional duty to seek out and identify such individuals.

In the relevant cases Sabo cites, the plaintiffs' claims were generally premised on alleged deliberate indifference in the face of each plaintiff's complaint that his sentence had expired, *see Figgs v. Dawson*, 829 F.3d 895, 900 (7th Cir. 2016) (plaintiff, among other

7

things, filed an "emergency" grievance contending his sentence had expired); *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993) (plaintiff filed numerous appeals and requests with parole board); *Sample*, 885 F.2d 1099 (plaintiff made numerous complaints to officials that he should have been released); *Haygood v. Younger*, 769 F.2d 1350, 1353 (9th Cir. 1985) (plaintiff wrote a letter to the warden demanding that he be released), or officials recognized the error in conjunction with an otherwise required review, *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085 (E.D. Wis. Jan. 13, 2020) (officials recognized the error as part of a routine calculation of the plaintiff's remaining sentence in conjunction with revocation proceedings).

In only two cases did the plaintiff allege that officials should have recognized the error in his specific sentence in the absence of it being brought to their attention, and in both of those cases the court rejected the argument. *Perrault*, 2016 U.S. Dist. LEXIS 2838, at *5 (dismissing action in part "because plaintiff has not alleged that any of the defendants had personal knowledge that his sentence was unlawful" and not deciding whether "prison administrators or prison record keepers had a constitutional obligation to identify and take some sort of action to correct a judge's unlawful sentencing order" because it would not affect the outcome); *Combs v. Pederson*, No. 08-cv-482-slc 1, 2009 U.S. Dist. LEXIS 30847, at *7-8 (W.D. Wis. Apr. 10, 2009) (rejecting plaintiff's claims that he was detained unlawfully because, in part, "[n]o one told defendant Pederson that plaintiff's probation had been terminated or that the order under which plaintiff was

incarcerated was not valid" and "it is not enough to show that plaintiff *should have known* that plaintiff was being confined illegally" (emphasis in original)).

That Wisconsin did more than was required and attempted to identify and correct the sorts of errors that permeate the criminal justice system did not then create a constitutional cause of action when those actions fell short. Judicial errors in sentencing are primarily matters for defendants and their counsel to recognize and address. *Cf. Williams*, 2020 U.S. Dist. LEXIS 5085, at *10 ("Williams or his criminal defense attorney could have noticed the error at the time the judgment was entered (or at any later time) and brought it to the court's attention."). A corrections official may be liable only if, knowing of an error in a plaintiff's case, that official is deliberately indifferent in acting to remedy the error. *See Moore*, 986 F.2d at 686 (citing *Sample*, 885 F.2d at 1110) ("a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted")). Knowing of a general likelihood of errors affecting a class of defendants is not enough to obligate a corrections official to double-check the lawfulness of a sentence imposed by a judge.

Consequently, there is no basis to reconsider the court's prior decision dismissing Sabo's claims against Hicks and Haley. Because they did not have a constitutional duty to identify and correct the judge's error in Sabo's sentence, Sabo's Eighth Amendment claim against Hicks and Haley fails.

**IT IS THEREFORE ORDERED** that Sabo's motion for reconsideration is **denied**.

Dated at Milwaukee, Wisconsin this 6th day of May, 2021.

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ _William E. Duffin_
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ WILLIAM E. DUFFIN
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ U.S. Magistrate Judge